WILLIAM WILLIFORD v. THE STATE.

No. 1673. Decided December 1, 1897.

**1. Murder—Self-defense—Necessity—Real and Apparent Danger—Charge.**

On a trial for murder, a charge upon self-defense, that "all self-defense rests upon necessity. Where there is no necessity to kill it can not be self-defense," is the law. Apparent necessity must be as pressing and imminent as real necessity. Under peculiar circumstances, it might be necessary to qualify or explain what is meant by "necessity," but such explanation is not required when the necessity is real and not apparent.

**2. Same—Apparent Danger—Charge.**

Where the court charged the jury in immediate connection with the charge above set out, "but a reasonable apprehension of death or great bodily harm will excuse a party using all necessary force to protect his life or person, and it is not necessary that there should be actual danger provided he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time; and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant;" Held, the charge presents apparent danger clearly and explicitly, and is the law, though the danger was only apparent.

**3. Same—Self-defense—Justifiable Force—Charge.**

Where the court charged the jury, "the law only allows a person to use such force as may be necessary to overcome the force that may be used against him, or as he believes is being used or about to be used against him;" and then, in connection therewith, in effect told the jury that if defendant's assailant was about to assault him with no intention of inflicting death or serious bodily harm, and it so appeared to defendant himself, the latter would not be justified in slaying his assailant until he had resorted to all other means; and a killing under such circumstances would be either murder or manslaughter according to the nature of the assault made upon defendant. Held, the charge does not intimate, that in order to prevent deceased from killing or inflicting bodily injury upon defendant, the latter must resort to all other means, but clearly conveys the idea, that if such state of facts existed defendant would have the right to slay his adversary. When taken in connection with the whole charge, the instruction is a correct application of the law to the case.

**4. Provoking Difficulty.**

On a trial for murder, where the court has given a full charge upon the law of self-defense, unlimited and unabridged by any charge on provoking a difficulty by defendant, it is not error to refuse an instruction asked by defendant upon the theory of such provocation.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Appeal from a conviction for murder in the second degree; penalty, twenty-one years imprisonment in the penitentiary.

This is the second time this case has been appealed. The facts on the former appeal will be found in Williford v. State, 36 Texas Criminal Reports, 414.

The following are the facts, as stated in appellant's brief, on this appeal:

The appellant is the son of the widow Williford, who lives near the little town of Rowlett, in Dallas County. A good portion of the time he worked at the gins, or with other machinery. When he had no job he seems to have made his home with his mother. Mrs. Williford had hired the deceased, John Baker, to stay on her farm for the year 1895, and he had moved to her house. William Williford did not like the Bakers, a brother of the deceased having married his sister. While drinking he had said that Baker should not live on the place; that he would kill him if he did, etc.

On the morning of the 21st day of December, 1894, the day of the killing, the parties had met in Rowlett. The deceased was whittling with his pocketknife, and was abusive to the appellant, whom he charged with having talked about the deceased to Mrs. Williford and others. Appellant was not aggressive in this quarrel, but said they would talk the matter over when they got with his mother. The deceased put some three quarts of whisky in his saddlebags and left Rowlett for home. Appellant also left for home soon after.

It is in proof that Baker had boasted of slapping Williford's jaws, and early on the morning of the killing had inquired if appellant was armed, threatening that he would "hurt Williford, and hurt him bad," if he meddled with his affairs. Some other talk of like nature was indulged in by the deceased at the Rowlett meeting. Deceased reached home before appellant, and when first noticed was sitting on the front steps of the Williford home. The hall door in which he fell was in his rear, and across the porch, say ten feet back. William Williford came home, entered the hall from the rear, and turned into his bedroom. No one saw the killing; only one shot was fired. Mrs. Williford and her son Henry were in the dining-room. Annie Hughes, a granddaughter of Mrs. Williford's, was in the kitchen. William Williford was heard to say, "Stand back," and a pistol was fired. The parties rushed into the hall. Baker had fallen on his face with a bullet in his forehead. Appellant was back toward the rear of the hall. Immediately some of the neighbors were sent for. The killing occurred in the afternoon, and the body laid on the floor until after night, when the coroner, the constable, and many others arrived. The knife of the deceased was found shut in his pocket, and no other weapon was found on his person or any near him. In his confessions appellant said that "Baker was coming at him with a knife, and he shot him;" he said "it was done in an instant, and if he had thought about it he could not have done it; but it was too late then; he had done it."

Mr. Townsend, another witness for the State, says: "The appellant told me that the deceased was coming at him with a knife; that if he had had time to think he would not have killed him."

To the coroner, Justice Swim, he said, "that he would not have done it for the world; but that he had killed him; that he was sorry for it, but could not take it back now; that it was too late." He said several times "that he ought not have killed him; that there was no call for it."

It appears from the constable's testimony, and probably others, that appellant had invited the deceased (so he said) to go before his mother; but deceased came at him with his knife and he shot him.

*Seay & Seay*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-one years in the penitentiary; hence this appeal.

Appellant complains of this portion of the charge of the court on self-defense: "All self-defense rests upon necessity. Where there is no necessity to kill, it can not be self-defense." This is law. Under peculiar circumstances, it would be necessary to qualify or explain what is meant by necessity. If the necessity was apparent only, then the charge might be calculated to mislead the jury, to the injury of the appellant; but, if the necessity was real, there is no injury in the charge. Apparent necessity must be as pressing and imminent as real necessity. The charge of the court is not treated fairly; for, when we read it altogether, it does not convey the idea that the necessity in this case must be real, and not apparent. Upon self-defense the court instructed the jury as follows: "All self-defense rests upon necessity. Where there is no necessity to kill, it can not be self-defense; but a reasonable apprehension of death or great bodily harm will excuse a party using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time; and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant." As we before remarked, if the danger was actual, there was no necessity of charging the jury in regard to apparent danger; but this charge presents apparent danger clearly and explicitly, and, when considered as a whole, is the law, though the danger was apparent only.

Counsel complains of the following charge: "The law only allows a person to use such force as may be necessary to overcome the force that may be used against him, or, as he believes, is being used, or about to be used, against him. And in this case, if you believe from the evidence that John Baker was about to make an assault upon the defendant, but did not intend to kill him or inflict serious bodily injury upon him, and that it did not reasonably appear to defendant that said Baker intended to kill him or inflict upon him serious bodily injury, then, before defendant could justify, under the law of self-defense, the taking of the said Baker's

life, he would have to resort to all other reasonable means of defense. And in this case, if you believe from the evidence that John Baker did assault defendant at the time of the killing (if any), but had no intention to kill defendant or inflict upon him serious bodily injury, and that defendant reasonably knew said fact, then, before defendant could plead self-defense, it must appear from the evidence that, before he did kill said Baker, he used all reasonable means to avoid the necessity of killing said Baker; and if it does not appear from the evidence that he did so resort to other means before killing said Baker, such a killing would be murder or manslaughter, according to the nature of the assault made by said Baker (if any) upon defendant; and in this connection your attention is here directed to the law hereinbefore submitted relating to murder and manslaughter."

Appellant's contention is that the court should have instructed the jury that, if the assault by the deceased was such as to threaten death or serious bodily injury, then the defendant need not resort to other means, but could kill at once. The charge as given does not intimate that, in order to prevent the deceased from killing or inflicting serious bodily injury upon appellant, he must resort to all other means; but a state of case is submitted in the charge which clearly conveys the idea that, if such a state of facts existed, appellant would have the right to slay his adversary. Take this in connection with instruction given in relation to a homicide committed in the prevention of any other unlawful and violent attack; the jury could not have come to any other conclusion than that appellant would have to resort to other means to prevent the threatened injury. When we take the charge as a whole, we find it a correct application of the law to the case before the court.

Appellant requested the court to give the following special instructions: "You are further instructed that the defendant, William Williford, had a right to go to the home of his mother, although he knew that the deceased was there, and although he knew that John Baker was at said house legally, and did not desire William Williford to come there. And if the defendant desired to approach and speak to said Baker, and invite said Baker to go before Mrs. Williford in order to discuss and settle any reports before Mrs. Williford, he had the right to so approach said Baker, provided he did so in a polite manner, and not in an offensive or insulting manner. You are further instructed that if defendant believed that said Baker would make an assault on the defendant, then the defendant had a right to arm himself in order to defend himself in case said Baker did assault him with a knife or any other deadly weapon; and by so arming himself, and going to the deceased, Baker, under such circumstances, he would not be deprived of any of his rights of self-defense. But the defendant, under such circumstances, and in case he was assaulted by said Baker, or in case he believed from all the appearances that said Baker then and there intended to kill him or inflict serious bodily injury on him, then the defendant would have the right of self-defense, as stated in the general charge on that subject."

Said charge was refused, and appellant excepted. By referring to the court's charge on self-defense, it will be observed that the court gave a full charge on this subject, and authorized the defendant to slay deceased if deceased made the first assault on him, from which it reasonably appeared to him that his life was in danger, or he was in danger of serious bodily injury; and the court also instructed the jury that appellant would have the right to slay the deceased if deceased made an assault on him of a violent and dangerous character, less than an assault with intent to take his life or inflict upon him serious bodily injury; provided he used all other means, except retreating, in order to avoid the necessity of slaying the deceased. It will be observed, further, that the court gave no charge predicated on the idea that the defendant may have provoked the difficulty; and thus his right of self-defense was unlimited and unabridged by any charge on provocation. If the court had given a charge on provocation or a bringing on of the difficulty on the part of the defendant, then the charge asked by appellant would have become necessary, but not otherwise. The judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.